IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HARVEY CHAMPAIGN,

    Plaintiff,

v.                                     Case No. 22-CV-232 KG/SCY

CENTURYLINK COMMUNICATIONS and its SUBSIDIARIES,
LUMEN TECHNOLOGIES, INC., and its SUBSIDIARIES,
and QWEST COMMUNICATIONS and its SUBSIDIARIES,

    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

    This matter is before the Court on two related motions: Defendants CenturyLink Communications' and Lumen Technologies, Inc.'s Motion to Dismiss (Doc. 4) and Plaintiff Harvey Champaign's Motion for Leave to File a First Amended Complaint (Doc. 10). Mr. Champaign Responded to the Motion to Dismiss and included a vast submission of attachments styled as appendices. (Docs. 13–21). Defendants replied. (Doc. 26). Mr. Champaign's Motion for Leave to File received a Response but he did not timely reply. (Doc. 11). Both motions are now fully briefed.

    This case concerns Mr. Champaign's employment at Qwest Communications. He alleges, in Count I, racial discrimination under the New Mexico Human Rights Act (NMHRA), NMSA 1978 §§ 28-1-1 to 14; in Count II, religious discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2; in Count III, retaliation via the NMHRA; in Count IV common law retaliatory discharge; and in Count V, intentional infliction of emotional distress (IIED). Complaint (Doc. 1) at 56–74.

Mr. Champaign filed this case *pro se* in the Eleventh Judicial District Court of New

Mexico on January 10, 2022, *id.* at 16, and the operative complaint he subsequently filed there

March 14, 2022, *id.* at 56. He filed his lawsuit after receiving an "Order of Non-Determination"

from the state Human Rights Bureau on January 4, 2022. *Id.* at 18. He also received a Dismissal

and Notice of Right to Sue from the Equal Employment Opportunity Commission, issued on

June 20, 2019. *Id.* at 19. Defendants removed the case to this Court via federal question

jurisdiction because of the Title VII claim and, alternatively, based on diversity jurisdiction.[1]

Notice of Removal (Doc. 1) at 7–13.

Mr. Champaign's Complaint names three corporate defendants. (Doc. 1) at 56. The first

of those three, Qwest, answered the Complaint. (Doc. 3). The Motion to Dismiss before this

Court is brought by the other two Defendants, CenturyLink and Lumen, arguing that neither was

Mr. Champaign's employer and therefore that the claims against them are improper for

numerous reasons, including lack of personal jurisdiction, lack of subject matter jurisdiction, and

failure to state a claim against them. (Doc. 4) at 4–13. Defendants also argue that the common

law claims are barred by the statute of limitations and the Title VII claim is barred by a failure to

exhaust administrative remedies and/or failure to file within the administrative time constraints.

*Id.* at 14–15.

---

[1] Mr. Champaign did not challenge that removal, and in fact implies that he agrees federal jurisdiction is proper in his Motion to Amend. *See* (Doc. 10) at 1. The Court here notes that it agrees that removal jurisdiction, 28 U.S.C. § 1441, is proper under federal question, 28 U.S.C. § 1331, because of the Title VII claim. The Court also finds removal is proper under diversity jurisdiction, 28 U.S.C. § 1332. There is complete diversity in this case. Plaintiff is a citizen of New Mexico, (Doc. 1) at 56, ¶ 2, while Lumen is a citizen of Louisiana, *id.* at 9, ¶ 39, Qwest is a citizen of Colorado and Louisiana, *id.* at 9, ¶ 40, and CenturyLink is a citizen of Delaware and Louisiana, *id.* at 9, ¶ 41. And the Court finds the amount in controversy, by a preponderance of the evidence, exceeds $75,000.00 because Mr. Champaign seeks backpay for eight years, front pay until retirement age, and punitive damages. *See id.* at 11, ¶ 50; *see also infra* Section II(C).

Mr. Champaign's Response argues that because Qwest publicly rebranded as first CenturyLink and later Lumen that he did, in fact, work for them, and those entities are properly named defendants. (Doc. 13) at 14–15. He also urges that the statute of limitations should be equitably tolled for his Title VII claim because he was waiting on the New Mexico Human Rights Bureau before filing this lawsuit, *id*. at 17, and for his IIED claim because his emotional distress incapacitated him and prevented him from filing suit earlier, *id*. at 19.

Before filing his Response, Mr. Champaign also filed a Motion for Leave to File a First Amended Complaint (Doc. 10). In it, he asks to include a new claim for *respondeat superior*, based in negligent hiring and retention and negligent training and supervision. Questions about whether that is one or multiple claims aside, Defendants responded in opposition and argued that the new claim is untimely and futile. (Doc. 11).

The Court, having considered the briefing and applicable law, and for the reasons explained below, grants the Motion to Dismiss and denies the Motion for Leave to Amend the Complaint.

I.    *Standards of Review*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion to dismiss, all "well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (internal citation omitted) cert. denied sub nom. *Santa Fe All. For Pub. Health & Safety v. City of Santa Fe*, 142 S. Ct. 1228 (2022). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  If a plaintiff fails to allege an essential element of their claim, the complaint is appropriately dismissed pursuant to Rule 12(b)(6).  *Ellis ex rel. Est. of Ellis v. Ogden City*, 589 F.3d 1099, 1102 (10th Cir. 2009).

II.     *Discussion*

        A.  *CenturyLink and Lumen Technologies are Improper Defendants*

        Because Mr. Champaign does not show that CenturyLink or Lumen employed him, or had any other relationship with him through which either could have caused him harm, he fails to state a valid claim against both.

        Each of the claims that Mr. Champaign brings, except intentional infliction of emotional distress, are employment-based causes of action, and thus a necessary element of each claim is that the defendant was the plaintiff's employer.  Taking the complaint count by count, the NMHRA, makes it unlawful for an <u>employer</u> to discriminate against an individual on the basis of age or race.  *Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 8 (emphasis added, here and in following citations).  For a plaintiff to prevail, he must demonstrate that his <u>employer</u> discriminated against him in <u>terminating his employment</u> because of his race.  *Id.* at ¶ 9.  Next, to establish a prima facie case of religious discrimination under Title VII, an employee must show that: (1) he or she had a bona fide religious belief that conflicts with an <u>employment requirement</u>; (2) he or she informed the <u>employer</u> of this belief; and (3) he or she <u>was fired</u> for failure to comply with the conflicting employment requirement.  *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000).  Third, in order to establish a claim of retaliation under the NMHRA, a plaintiff must demonstrate that "(1) she engaged in protected activity; (2) she suffered an <u>adverse</u>

employment action; and (3) there is a causal connection between these two events." *Charles v. Regents of New Mexico State Univ.*, 2011-NMCA-057, ¶ 8 (quoting *Ocana v. Am. Furniture Co.*, 2004–NMSC–018, ¶ 33). "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment." *Id.* (quoting *Ulibarri v. State of N.M. Corr. Acad.*, 2006–NMSC–009, ¶ 16). Fourth, retaliatory discharge is premised in the improper firing of an employee by an employer. *See, e.g.*, *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶¶ 22-26. For an employee to recover under retaliatory discharge, the employee must show a causal connection between his actions and the retaliatory discharge by the employer. *Chavez v. Manville Prod. Corp.*, 1989-NMSC-050, ¶ 16.

Last, while IIED does not require an employment relationship, it nonetheless requires showing some factual connection between the defendant and plaintiff such that the defendant caused emotional harm. The following elements must be proven to establish a claim of IIED: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25 (internal quotation and citation omitted); *see also* UJI 13–1628 NMRA.

Here, the complaint fails to allege facts showing that CenturyLink and Lumen were Mr. Champaign's employer or are otherwise liable for the misconduct alleged. Viewed through the dismissal standard, the Complaint fails to state a claim against CenturyLink and Lumen.[2]

---

[2] Though a "pro se litigant's pleadings are to be construed liberally," that generous reading "does not relieve the plaintiff of the burden of alleging sufficient facts." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The analysis, however, goes beyond the four corners of the Complaint because CenturyLink and Lumen have presented evidence, via affidavit, that each is a corporate entity distinct from Qwest and that neither ever employed Mr. Champaign.  (Doc. 4-1) at ¶¶ 7, 13, 17–19.  Mr. Champaign counters by showing that Qwest rebranded and renamed itself first from Qwest to CenturyLink and second from CenturyLink to Lumen.  (Doc.13) at 14–15; (Doc. 13-1) (employee communication, external press releases, and third-party webpages describing corporate history and re-branding).  Mr. Champaign additionally attaches a great deal of "appendices" which tangentially relate to the corporate names or structures of the named Defendants, but which are not further explained or argued.  *See* (Docs. 14, 14-1) (Lumen Wikipedia page); (Docs. 15, 15-1) (CenturyLink Securities and Exchange Commission filings from SEC website);  (Docs. 16, 16-1) (2011 CenturyLink and Qwest merger SEC filing from SEC website); (Docs. 17, 17-1) (continuation of merger filing); (Docs. 18, 18-1) (continuation of merger filing); (Docs. 19, 19-1, 19-2) (continuation of merger filing; 2020 press release announcing CenturyLink rebrand to Lumen).

The Court notes that its consideration of the above-referenced attachments and evidence converts this issue from a motion to dismiss to a motion for summary judgment.  *Hall v. Bellmon*, 935 F.2d 1106, 1110–11 (10th Cir. 1991).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a).

Having searched Mr. Champaign's attachments, the Court determines that Mr. Champaign's evidence does not contradict Defendants' showing that Lumen and CenturyLink

are entities separate from Qwest which did not employ him.  The Court concludes that no

reasonable jury could find, based on these attachments, that CenturyLink, Lumen, and Qwest are

the same corporation or that either CenturyLink or Lumen employed Mr. Champaign.  There

being no dispute of fact on this point, Mr. Champaign's claims against CenturyLink and Lumen

fail on the summary judgment standard.

One last issue here is the ability of plaintiffs to sue separate but related corporate entities

through a legal theory called "piercing the corporate veil," which involves imputing the liability

of the subsidiary company (Qwest, in this instance) onto the parent company (Lumen) where

they are deemed so interrelated as to be "alter egos."[3]  *Cf.*, *United States v. Bestfoods*, 524 U.S.

51, 61 (1998) ("It is a general principle of corporate law...that a parent corporation...is not liable

for the acts of its subsidiaries.").  Extending the liberal interpretation owed to *pro se* parties[4] to

Mr. Champaign's complaint and briefing, the Court construes his Response as arguing just

that—that Lumen and Qwest are essentially one and the same for purposes of liability.  *See* (Doc.

13) at 15 ("Therefore, Qwest Communications, CenturyLink Communications LLC or Lumen

Technologies Inc. is a single entity with change of name over the years.").

The Court, however, is unpersuaded that Lumen and Qwest are "alter egos" which are

liable for the others' misconduct because Mr. Champaign does not argue the necessary elements

to pierce the corporate veil—*i.e.*, unity of interest and injustice.  *See N.L.R.B. v. Greater Kansas*

---

[3] According to Defendants, CenturyLink is a separate subsidiary of Lumen and therefore
unrelated to Qwest for purposes of this analysis.  (Doc.4-1) at ¶ 19.

[4] *See, e.g.*, *Hall*, 935 F.2d at 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be
construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.
We believe that this rule means that if the court can reasonably read the pleadings to state a valid
claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite
proper legal authority" or "his confusion of various legal theories").

*City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993).  Nor does he show any facts necessary to make a finding of alter ego status.  That is, he does not show that the parent had pervasive or dominant control of the affairs of the subsidiary, undercapitalization of the subsidiary, or a fraudulent attempt to segregate liabilities.  *See, e.g.*, *id.* at 1052–1053; *see also* Theory and factors warranting piercing the corporate veil, 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.  And, critically, merely using the same name in the conduct of business is insufficient to demonstrate an alter ego.  *See e.g.*, *Sightline Payments, LLC v. Everi Holdings Inc.*, No. 6:21-CV-01015-ADA, 2022 WL 2078215, at *5 (W.D. Tex. June 1, 2022) (reasoning corporate defendants' use of unified social media account, one website, and same domain name in email addresses insufficient to find "alter ego"); *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *5 (E.D. Tex. July 6, 2021) (declining to find alter ego involving Toyota subsidiaries even though group of companies all presented themselves as "Toyota"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 168 F. Supp. 3d 918, 937 (E.D. La. 2016) (finding the sharing of a common logo and part of a common name does not evince alter ego status).  For these reasons, the Court declines to impose liability on Lumen via a corporate alter ego theory.

   The complaint fails to state a claim where it does not name an actual employer of Mr. Champaign.  And, taking all the attached evidence into consideration, Mr. Champaign fails to show a dispute of material fact on the question whether CenturyLink and Lumen were ever his employer.  Thus, the Court enters summary judgment for CenturyLink and Lumen on all claims brought against them.

B. *Mr. Champaign's Common Law Claims Are Barred By The Statute Of Limitations*

Having dismissed the claims against Lumen and CenturyLink for failure to state a claim, the Court need not address the remaining arguments. The Court nonetheless continues because these questions will need to be answered at one time or another and they are currently fully briefed by the parties. The Court first addresses the statute of limitations as applied to Count IV, retaliatory discharge, and Count V, IIED.

Various statutes of limitations govern common law claims in New Mexico. Torts involving an injury to a person, such as the IIED claim here, have a three-year statute of limitations. NMSA 1978 § 37-1-8. And the default statute of limitation, if one is not explicitly provided elsewhere, is four years. § 37-1-4. The Court determines that retaliatory discharge, lacking reference to a statutory provision, is subject to the four-year statute of limitations.

The latest date Mr. Champaign's retaliatory discharge and IIED claims could have accrued is the date he resigned from Qwest, March 10, 2014. *See* (Doc. 1) at 69, ¶ 52. Mr. Champaign, in turn, filed this lawsuit in state court on January 10, 2022. *Id*. at 16, 39. That near-eight-year gap falls well outside any applicable statute of limitations.

Mr. Champaign urges equitable tolling of the IIED claim's statute of limitations. He argues that a party may be equitably estopped from asserting a statute of limitations defense if the party's conduct has caused the plaintiff to refrain from filing his action until after the limitations period has expired. (Doc. 13) at 18 (citing *In re Drummond*, 1997-NMCA-094). Because Defendants' conduct subjected Mr. Champaign to serious emotional distress, he was "incapacitated" and "incapable of filing suit timely" and thus the Defendants should be estopped, he explains. *Id*. at 19.

Mr. Champaign, however, cites to no cases where mental incapacitation has been the justification for extending the statute of limitations in an IIED case.  To the contrary, according to New Mexico courts, equitable estoppel requires some sort of fraud or deception, which is not alleged in this case.

> Under the doctrine of equitable estoppel, the party estopped from asserting a statute of limitations must have (1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed. The party arguing estoppel must (1) not know the real facts, and (2) change his or her position in reliance on the estopped party's representations.

*Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 22 (citations omitted).  Equitable estoppel may also apply "in cases where the defendant fraudulently conceals the cause of action from the plaintiff." *Id*.  Because incapacitation, rather than misrepresentation or fraud, is alleged here, the Court concludes equitable estoppel does not apply to the IIED claim under the facts of this case.

Mr. Champaign does not make an argument for why the statute of limitations should not apply to his common-law retaliatory discharge claim.  The Court, therefore, concludes that it is also susceptible to the appropriate time limits.  Mr. Champaign's claims for IIED and retaliatory discharge, as applied to CenturyLink and Lumen,[5] are barred by the statutes of limitations and are dismissed with prejudice.[6]

C.  *Mr. Champaign's Title VII Claim Is Also Time Barred*

---

[5] Presumably, the statute of limitations arguments could apply to any defendant.  And the Court notes Qwest invoked the statute of limitations as an affirmative defense in its answer.  (Doc. 3) at 15, ¶ 12.  But here the argument is raised only by CenturyLink and Lumen, so the Court applies its reasoning only to them at this point.

[6] *See, e.g.*, *Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) ("Because the claims are time-barred, we conclude that amendment would be futile. If a complaint fails to state a claim and amendment would be futile, dismissal with prejudice is appropriate.").

The parties agree that Title VII imposes a 90-day time limit for filing a civil action after the complainant receives the Equal Employment Opportunity Commission's (EEOC) right to sue notice.  (Doc. 4) at 14; (Doc. 13) at 16 (both citing 42 U.S.C. § 2000e-5(f)(1) and *Williams v. Southern Union Gas Co.*, 529 F.2d 483, 487 (10th Cir. 1976)).  Mr. Champaign attached to his initial lawsuit his EEOC Dismissal and Notice of Rights, which was addressed to him and his then-attorney on June 20, 2019.  (Doc. 1) at 19.  Even assuming it took some days for Mr. Champaign to receive the Notice, [7] his 90-day time limit to file his Title VII claim expired some time shortly after September 18, 2019.  Mr. Champaign filed this action on January 10, 2022, *id.* at 16, well over two years past the expiration of the statutory time limit.

Mr. Champaign once again urges that Defendants be equitably estopped from asserting a statute of limitations defense.  (Doc. 13) at 16–17.  Mr. Champaign argues, in short, that he was diligently pursuing his rights at the New Mexico Human Rights Bureau, and but-for its delay in issuing an Order of Non-Determination, he would have been able to file his lawsuit earlier.  *Id.* at 17.

The Court is unpersuaded by this argument because Mr. Champaign does not present any authority for the proposition that he was required to wait for the NMHRC to adjudicate his race discrimination claim before filing his Title VII religious discrimination claim.  The text of the statute requires Title VII civil actions be filed within 90 days of receipt of the Notice of Right to Sue and does not reference exceptions for pursuing separate claims at state agencies.  Thus, the

---

[7] In his Response, Mr. Champaign attached an email from his former attorney to him with the subject line "EEOC Notice of Rights to Sue" which was dated October 2, 2019, and which therefore implies Mr. Champaign affirmatively received his EEOC Notice at least sometime in fall 2019.  (Doc. 21) at 2.

Court concludes that Count II of Mr. Champaign's Complaint—his Title VII religious discrimination claim—is time barred as it applies to Lumen and CenturyLink.

Because Mr. Champaign's Title VII claim is his only federal claim, its dismissal implicates federal jurisdiction. The Court reiterates, however, that it found jurisdiction lies via diversity in addition to federal question. *See supra* at 1, n.1.

    D. *Mr. Champaign's Proposed Amendment is Futile*

Mr. Champaign filed a Motion for Leave to File a First Amended Complaint (Doc. 10). In it he represents that he would add one new cause of action for Respondeat Superior against the corporate Defendants for the actions of Mr. Brown and Mr. Johnson, presumably other employees of Qwest. *Id.* at 3–4. He would also claim negligent hiring and retention of Mr. Brown, *id.* at 4, and negligent training and supervision, also of Mr. Brown, *id.* at 5. The Court will construe these as three separate claims.

The three Defendants oppose the amended complaint for several reasons: that the amendment is untimely, that it fails to state a claim, and additionally that it suffers from the same core problem raised in the Motion to Dismiss, that Lumen and CenturyLink are not factually implicated. (Doc. 11).

Federal Rule of Civil Procedure 15(a)(2) permits the Court to allow amended complaints and suggests the Court should do so "freely" when "justice so requires." But "the district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Svcs., Inc.*, 175 F. 3d 848, 859 (10th Cir. 1999). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.*

The Court concludes that all the proposed additional claims sound in tort and therefore are barred by the statute of limitations just as Mr. Champaign's other common law claims are. For that reason, the Court denies the Motion to Amend (Doc. 10).

III.    *Conclusion*

The Court grants Defendants CenturyLink's and Lumen's Motion to Dismiss (Doc. 4). Because Mr. Champaign fails to show evidence that CenturyLink or Lumen ever employed him, the Court enters summary judgment on all claims brought against them.  Furthermore, the Court concludes that each of Counts II, IV, and V are barred by the applicable statute of limitations, and alternatively dismisses those claims with prejudice as brought against CenturyLink and Lumen on that ground.  Finally, the Court denies Mr. Champaign's Motion to Amend his Complaint (Doc. 10) as futile.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE